**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:15-cv-24558-FAM

EDWARD ZIWCZYN, BERNARD DEPAUL,
and RHONA HOLGANZA, individually and on
behalf of all others similarly situated,

        Plaintiffs,

v.

REGIONS BANK, *et al*,

        Defendants.

_____

**PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AND
<u>FOR CERTIFICATION OF THE SETTLEMENT CLASS</u>**

Undersigned Counsel are proud to announce another extraordinary settlement that will provide relief to mortgagors nationwide who had insurance hazard or wind-only coverage "force placed" on their properties by Regions Bank ("Regions"), as well as injunctive relief that would effectively end many of the lender-placed insurance ("LPI") practices at issue in this case.  This is the fourteenth LPI class action settlement presented in this District, all prior settlements have been granted preliminary or final approval and the undersigned counsel respectfully request that the Court do the same here.

This action brought claims against Regions and the Assurant Defendants: American Security Insurance Company ("ASIC"), Standard Guaranty Insurance Company ("SGIC"), Voyager Indemnity Insurance Company ("VIIC") related to their LPI practices.   Under the settlement, Defendants will pay cash refunds of 12.5% or 7% of the total net annual premium to class members who paid the amounts charged them, and credit the same amounts to class members who were charged for hazard or wind-only LPI, but never made payments.  All class members need to do is fill out a simple claim form and submit verification of their identity (if cash will be provided) with no supporting records regarding the LPI charge. This settlement follows substantially similar LPI settlements that this Court has already granted preliminary approval, including those in *Wilson v. Everbank, N.A.*, No. 14-cv-22264 (S.D. Fla.); *Circeo-Loudon v. Green Tree Servicing, LLC*, No. 14-cv-21384 (S.D. Fla.); *Jackson v. U.S. Bank*, 14-cv-21252 (S.D. Fla.); *Montoya v. PNC Bank, N.A.*, No. 14-cv-20474 (S.D. Fla.); *Almanzar v. Select Portfolio Servicing, Inc.*, No. 14-cv-22586 (S.D. Fla.); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649 (S.D. Fla.); *Braynen v. Nationstar Mortgage, Inc.*, No. 14-cv-20726 (S.D. Fla.); *Saccoccio v. JPMorgan Chase Bank, N.A.*, No. 13-cv-21107 (S.D. Fla.); *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721 (S.D. Fla.); *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104 (S.D. Fla.); *Hamilton v.*

*SunTrust Mortgage, Inc.*, No. 13-cv-60749 (S.D. Fla.); *Hall v. Bank of America, N.A.*, No. 12-cv-22700 (S.D. Fla.); and *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.).[1]

The settlement's proposed benefits are the result of hard-fought, arm's-length negotiations between the parties and their counsel under the direction of an experienced mediator, Rodney Max. Undersigned counsel were well-positioned to evaluate and negotiate this settlement because they have been investigating mortgage lenders' LPI practices since November 2010, and their investigation and the litigation that followed involved a review of millions of pages of documents and over thirty depositions. Despite that work, Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution. As such, and given the immediate and substantial benefits the settlement will provide, there is no question that the settlement falls within the range of reasonableness and warrants preliminary approval.

## FACTUAL BACKGROUND

### 1.    Defendants' LPI Practices

The standard form mortgage agreements owned or serviced by Regions require the borrower to maintain insurance on the property securing his or her mortgage loan, and provide that the lender or servicer may force new coverage on the property at the borrower's expense in the event of a lapse. (D.E. 20 ¶ 58.) The mortgage agreement authorizes the lender to obtain coverage to protect itself against risk of loss, and either advises the borrower that the cost of the coverage might significantly exceed that of the borrower's voluntary coverage or provides that the lender may pay costs necessary to protect its rights in the property.

---

[1] The settlements in *Almanzar*, *Montoya*, *Braynen*, *Lee. Saccoccio, Fladell, Diaz, Hall, Hamilton*, and *Williams* have been granted final approval.

3

2.      **The Litigation**

Plaintiff Edward Ziwczyn filed the original nationwide class action complaint against Defendants on December 11, 2015, bringing claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, tortious interference, and violations of the Truth in Lending Act.  (D.E. 1.)  A First Amended Complaint was filed on December 18, 2015 that added Plaintiffs Depaul and Holganza as well as claims for breach of fiduciary duty and violation of the federal RICO statute.  Defendants moved to dismiss the First Amended Complaint on February 16, 2016 (D.E.s 13, 14.)  Based upon the amended complaint, prior rulings of the Court, and the vast discovery already produced in the other LPI actions by the Assurant Defendants, the parties agreed to engage in an early mediation.  While continuing to litigate the case, the Parties engaged in a number of mediation telephone conference under the direction of Mr. Max.  Plaintiffs' Counsel received specific discovery related to the Regions lender-placed insurance program in addition to the more than two million pages of documents previously produced in parallel force-placed insurance litigation involving the Assurant Defendants before this Court and across the country.

The Parties reached a settlement-in-principle during the negotiations, and the Parties' counsel agreed on a settlement outline that identified the material terms of the settlement.  On March 21, 2016, the parties jointly moved to stay the case pending the Court's approval of their nationwide class action settlement. (D.E. 18.) The parties subsequently finalized and executed a settlement agreement, a copy of which is attached as **Exhibit A**.[2]

---

[2] The following documents are attached to the Settlement Agreement as exhibits:  Class Notice (Exhibit A); Claim Form Instructions (Exhibit B); Claim Form (Exhibit C); Affidavit for Deceased Co-Claimant Claims (Exhibit D); proposed Preliminary Approval Order (Exhibit E); proposed Final Approval Order (Exhibit F); and proposed Final Judgment (Exhibit F-1). Due to a personal emergency, Plaintiffs DePaul and Holganza (spouses) were unexpectedly unavailable to approve

3.      **The Settlement Terms and Agreement**

   A.  *The Proposed Settlement Class*

The Settlement Agreement provides relief to "all borrowers in the United States who …

were charged by Regions under a hazard or wind-only LPI Policy," between January 1, 2009 and

the preliminary approval date.  (Ex. A ¶¶ 3.1, 3.2).  This class will include borrowers whose homes

are in foreclosure and short sale, and those granted a deed in lieu of foreclosure or loan

modifications.[3]

   B.  *Monetary and Injunctive Relief*

The Settlement Agreement affords members of the Settlement Class significant monetary

and injunctive relief.  (*Id.* ¶ 4.)   The monetary relief will compensate class members for a

significant part of the inflated portion of the amounts that they either paid or were charged for

force-placed coverage.  All Settlement Class members who paid any portion of the amounts owed

for LPI and submit a valid claim form will recover 12.5% of the LPI policy if it was placed on or

before October 31, 2013 and 7% if the LPI policy was placed on or after November 1, 2013, of the

net premium *charged* to them during the class period, less any refund credited them.  (*Id.* ¶ 4.6.2.)

The payment is taken from the entire premium, rather than the "excess" or inflated portion of the

premium, since a considerable portion of the premiums charged, in fact, was applied to pay for

coverage.  Qualified members who paid any portion of their premiums will receive a check from

Regions for the full settlement amount.  (*Id.*).  Settlement Class members who were charged but

---

and execute the formal written Settlement Agreement.  Upon receipt, Plaintiffs' Counsel will file
additional signature pages with the Court.

[3] By contrast, the court in *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.),
specifically excluded certain categories that are included in this settlement from the Florida class
it certified in February 2012. *See Williams*, (D.E. 211).

did not pay for LPI will receive a check or a credit to their Regions account in the amount of 12.5% if the LPI policy was placed on or before October 31, 2013 and 7% if the LPI policy was placed on or after November 1, 2013 of the LPI policy's net premium, the distribution method being at Regions' discretion.  (*Id.* ¶ 4.6.1.)

The injunctive relief provided by the Settlement Agreement will put an end to many of the LPI practices that are the subject of this lawsuit.  The Settlement Agreement enjoins Regions and the Assurant Defendants from continuing to collect what the complaints allege are illegitimate kickbacks for LPI.  For a period of five years following the Final Settlement Date, Regions will accept no financial interest in the placement of LPI other than the premium itself and the protection afforded it by the insurance coverage.  (*Id.* ¶ 4.2.1.)  The Settlement Agreement prohibits Regions and its affiliated companies from accepting all or a portion of any commission paid on LPI; entering into quota-share reinsurance arrangements with the Assurant Defendants or any other insurer; accepting payments from any forced-placed insurer or vendor for administrative or other services related to forced-placed insurance; and placing LPI through a Regions-affiliated insurer or vendor.  (*Id.* ¶¶ 4.2.1, 4.2.2.)  The Assurant Defendants will similarly be prohibited for five years from providing LPI commissions to Regions-affiliated agents or brokers, quota-share reinsurance arrangements, payments for administrative or other services associated with LPI policies, and accepting from Regions payments for below-cost or free outsourced services.  (*Id.* ¶ 4.3.)

The Settlement also requires Regions to establish LPI coverage at the last-known coverage amount or the unpaid principal balance on a borrower's loan, so that LPI coverage moving forward bears some relation to the value of the interest it protects.  (*Id.* ¶ 4.2.1.)  Regions will also advance funds in the event of a lapse to continue coverage under the borrower's voluntary policy, (*id.*), thus

6

reducing the number of LPI policies issued by Regions and Assurant Defendants. Finally, the Settlement requires Regions to refund any amounts due to the borrower once voluntary insurance is put back in place within fifteen days of receipt of evidence of voluntary coverage. (*Id.*)

### C. *Release of Claims against Defendants*

In exchange for the relief provided by the Settlement, members of the Settlement Class will release Regions and the Assurant Defendants, as well as their all other entities included in the definition of "Released Persons" set forth in the Settlement Agreement (Ex. A ¶ 2.42), from all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands "that were or could have been sought or alleged in the Litigation or that relate, concern, arise from, or pertain in any way to the Released Persons' conduct, policies, or practices concerning Regions' placement, or the Assurant Defendants' issuance, of LPI Policies or to the receipt or disclosure or nondisclosure of charges related to the advancing of LPI premiums during the Settlement Class Period, including but not limited to conduct, policies or practices concerning LPI Policies or to charges for Regions' Placement of LPI Policies during the Settlement Class Period." (*Id.* ¶ 10.1.)

### D. *Class Notice and Claims Process*

Settlement Class members will receive notice of the settlement, instructions, and a claim form by first-class mail at their last-known mailing address in the forms attached to the Settlement Agreement as Exhibits A, B, and C, respectively, assuming they are approved by the Court. (*Id.* ¶ 6.1). Class members will receive both English- and Spanish-language versions of these documents. (*Id.*) The notice will be mailed no fewer than 90 days before the date set for the final approval hearing. (*Id.*). The Claims Administrator shall perform a search of the National Change of Address database for each mailing address attached to a notice that is returned as undeliverable.

(*Id.*).   The Settlement Administrator will also establish a website on which Settlement Class members may download and print or e-sign and upload a claim form and review the Settlement Agreement and its exhibits. (*Id.* ¶ 6.2).  The parties will also cause notice of the settlement to be published in *USA Today* and advertised on the internet.  (*Id.* ¶¶ 6.3, 6.4.)  The notice will provide a toll-free number to call for settlement information.   (*Id.* ¶ 6.3).   Members may opt out or object by following the prescribed process.  (*Id.* ¶¶ 11, 12.)

To obtain relief from Defendants, Settlement Class members will be required to submit the claim form on or before a deadline that will be set by mutual agreement of the Parties.  (*Id.* ¶¶ 2.9, 7.1).  The claims will be reviewed and approved by the Settlement Administrator, who will then make a determination of the amount owed each class member using Defendants' electronic records, and then have 180 days after the Final Settlement Date to distribute the monetary relief.[4] (*Id.* ¶¶ 7.2, 7.3.)  The Settlement Administrator will advise Class Counsel promptly of any claims deemed invalid before those claims are denied so that Class Counsel may follow up with the borrower to cure any deficiency in his or her submission.  The Claims Administrator shall also send notice to claimants submitting deficient claims providing them the opportunity to cure the defective, incomplete, or inaccurate Claim Form. (*Id.* ¶ 7.2.1.)  The parties agree to attempt to resolve any disputes related to the denial of class member claims in good faith.

A claims-made process is appropriate here, as the Regions and Assurant Defendants have represented during the mediation that they cannot, on a system-wide basis and without an individualized review, determine the amounts paid or currently owed by a borrower for LPI.

---

[4] For borrowers who did not pay the amounts charged them for LPI, the Settlement Administrator will have 90 days to provide Defendants with a list of class members who submitted claim forms, which will include the amount to be credited to borrowers who did not pay the amounts charged them for LPI.  (Ex. A ¶ 7.3.2.)  Defendants will then have an additional 90 days to credit these borrowers' escrow accounts or cause the Settlement Administrator to issue them checks for the amount due pursuant to the Settlement's terms.  (*Id.* ¶ 7.3.4.)

### E.   *Class Counsel Fees and Expenses and Named Plaintiffs' Case Contribution Award*

The Parties have stipulated that the undersigned law firms will serve as Class Counsel.   (*Id.* ¶ 2.15.)   Class Counsel's application for fees and expenses for all of the law firms involved will not exceed $1.75 million.   (*Id.* ¶ 15.1.)   Defendants will also pay the named plaintiffs service awards not to exceed $5,000.00.   (*Id.* ¶ 15.4.)   The Court will consider these awards separate and apart from the fairness, reasonableness, and adequacy of the settlement.   (*Id.* ¶ 15.5.)

### F.   *Final Approval and Objections*

Class members may object to the settlement no later than 30 days prior to the Final Approval Hearing, or as the Court may otherwise direct.   (*Id.* ¶ 2.33.)   The Parties shall respond to any objections within 10 days prior to the Final Approval Hearing.

## LEGAL ARGUMENT

## I.       THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length.   Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at \*2 (M.D. Fla. Sept. 13, 2006).   For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992).   "Approval of a class action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at \*4 (S.D. Fla. May 14, 2007).   Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.*   In the second step, after notice to the class and time and opportunity for absent class members

9

to object or otherwise be heard, the court considers whether to grant final approval. *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).

The standard for preliminary approval of a class action settlement is not high—a proposed settlement should be preliminarily approved if it falls "within the range of possible approval" or if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting MANUAL FOR COMPLEX LITIGATION § 1.46 at 62, 64-56 (5th ed. 1982). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (citation omitted).   Applying this standard, this Court has granted preliminary approval of thirteen settlements with similar facts.

Similar to these prior settlements, the proposed settlement here is the product of arm's-length negotiations assisted by an experienced and respected mediator, by counsel with significant experience in complex class action litigation, carries no "obvious deficiencies," and falls well within the range of reason. The Court should accordingly enter an order granting preliminary approval.

## A. The Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.

At the preliminary approval stage, district courts consider whether the proposed settlement appears to be "'the result of informed, good-faith, arms'-length negotiation between the parties and their capable and experienced counsel' and not 'the result of collusion[.]'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011).  The settlement terms in this case are the product of significant give and take by the settling parties, and were negotiated at

arm's length.  The parties participated in mediation phone conferences over several weeks with Rodney Max, a well-respected mediator with significant experience resolving complex suits.  The very fact of Mr. Max's involvement weighs in favor of preliminary approval.  *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of court-appointed special master to oversee mediation evidenced procedural fairness of negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion).

During the course of the negotiations, Defendants provided specific information regarding the Regions LPI program.  The parties' extensive negotiations were also informed by considerable discovery taken of the Assurant Defendants in prior LPI cases.  Class Counsel and their co-counsel have reviewed millions of pages of documents from the Assurant Defendants and taken over thirty depositions of their employees and corporate representatives.  *See, e.g., Saccoccio v. JPMorgan Chase.*, No. 13-cv-21107 (S.D. Fla.); *Fladell*, No. 13-cv-60721 (S.D. Fla.); *Circeo-Loudon v. Green Tree Servicing, LLC.*, No. 14-cv-21384 (S.D. Fla.). The fact that some of this evidence was obtained through informal methods does not affect the ability of counsel to assess the strength and weaknesses of their respective positions. Courts have routinely approved settlements based upon information obtained by counsel through informal means.  *See, e.g., D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001); *Corrugated Container Antitrust Litig.*, 643 F.2d at 211; *Cotton*, 559 F.2d at 1332.

**B.  The Settlement Falls Squarely within the Range of Reasonableness.**

The Settlement provides considerable monetary and injunctive relief to the Settlement Class, and falls well within the range of possible approval.

**1.  Monetary Relief**

The Settlement Agreement provides significant monetary benefits. Settlement Class members who paid LPI charges will be eligible to receive a check for 12.5% or 7% of the net premium charged, and all class members who were charged for LPI but did not pay any premium will receive 12.5% or 7% of the net premium charged by check or a credit to their escrow account as described above. *See* p. 5, *supra*. This percentage will be taken from the entire amount charged, most of which protected Regions' interests in borrowers' properties. (*Id.*) Settlement Class members, that is, will not recover 12.5% or 7% of their economic damages; they will instead recover a substantial portion of the amounts they were charged in excess of the actual cost of LPI coverage.

Federal courts hold that settlements providing the class with a percentage of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 542-43 (S.D. Fla.) (approving recovery of $.20 per share where desired recovery was $3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is inadequate or unfair"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement providing recovery of 0.2% of sales). "Moreover, when settlement assures immediate payment of substantial amounts to class

12

members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson*, 2011 WL 4357376, at *12.

Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution, including certifying a nationwide class and overcoming Defendants' filed-rate doctrine and other defenses.  Each class member stands to recover hundreds, if not thousands, of dollars as a result of the settlement.  The settlement's monetary recovery falls well within the range of reasonableness.

### 2.  Injunctive Relief

Once approved, the settlement will also prohibit Regions and the Assurant Defendants for five years from accepting what the complaints alleged were an illegitimate financial interest in the placement of LPI.  (Ex. A ¶¶ 4.2, 4.3).  This means that Regions will no longer collect, and the Assurant Defendants will no longer pay, *inter alia*, LPI commissions to Regions-affiliated agents or brokers, revenue arising from quota-share reinsurance arrangements, or payments for below-cost outsourced services.  (*Id.*)  The Settlement Agreement effectively prohibits the Regions and Assurant Defendants from continuing to implement the practices complained of.  There can be no question that this result is reasonable.

### C.  Plaintiffs and the Settlement Class Will Avoid Considerable Litigation Hurdles.

Any evaluation of the settlement benefits must be tempered by the recognition that any compromise involves concessions by the parties.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Civil Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted).  Had litigation continued, Plaintiffs and Settlement Class members risked not prevailing on any of their claims in this matter. The Defendants raised numerous defenses to Plaintiffs' claims, including application

13

of the filed-rate doctrine which this Court has recognized as potentially dispositive.  *See, e.g.,* *Montoya*, 2014 U.S. Dist. LEXIS 119464 at *1 (S.D. Fla. June 20, 2014) (noting that given recent developments, "Plaintiffs' force-placed insurance claims confront a blustery legal atmosphere"); *see also Patel v. SLS*, No. 15-cv-62600, (D.E. 36.)

    **D.  Class Counsel Believes the Settlement Is Reasonable.**

    Significant weight should be attributed to the belief of experienced counsel that the negotiated settlement is in the best interest of the class.  *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 666 (D. Minn. 1974) (recommendation of experienced counsel is entitled to great weight); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).  "The views of the parties to the settlement must … be considered."  Counsel here have litigated numerous LPI class actions over the course of almost four years, and fully support the settlement.  They certified the first LPI class in Florida in *Williams*, No. 11-cv-21233, and then settled that case; briefed and argued five motions to centralize LPI litigation in nationwide MDLs; settled claims against Chase, HSBC, Wells Fargo, Bank of America, SunTrust, Nationstar, Ocwen, PNC, Everbank, Select Portfolio Servicing, U.S. Bank, and Green Tree Servicing, and their force-placed insurers on behalf of nationwide classes, secured final approval of eleven of those settlements and are currently litigating three additional cases against other major mortgage lenders.  *See Edwards v. Seterus, Inc.*, No. 15-cv-23107 (S.D. Fla.); *Beber v. Branch Banking & Trust Co.*, No. 15-cv-23294 (S.D. Fla.); *Fowler v. Caliber Home Loans*, No. 15-cv-24542 (S.D. Fla.).  Based on this experience, and decades more with class action lawsuits, it is Class Counsel's opinion that, given the uncertainty and expense of pursuing these claims through trial, the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

## II.   THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

"It is well established that a class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011) (brackets in original). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class," save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.*

### A.   The Settlement Class Meets the Four Requirements of Rule 23(a).

The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

#### 1.   The Settlement Class Is Sufficiently Numerous.

Rule 23(a)(1) requires Plaintiffs to show that the proposed class is so numerous that joinder of all members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). "While there is no fixed rule, generally a class size [of] less than twenty-one is inadequate, while a class size of more than forty is adequate." *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) (citing *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484,489-90 (S.D. Fla. 2003)). The parties have valued the aggregate monetary relief in this settlement as being worth more than $7.9 million, with Regions having forced approximately 35,000 policies during the class period. The proposed class in this case well exceeds the minimum threshold. *See Cox v. American Case Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986). The numerosity requirement is satisfied here.

#### 2.   Questions of Law and Fact Are Common to All Settlement Class Members.

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class. *See* Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high." *Cheney,* 213 F.R.D. at 490. Commonality requires a showing that the class members' claims

15

"depend on a common contention" and that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2), even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *In re Checking Account Overdraft Litig.,* 275 F.R.D 666, 673-74 (S.D. Fla. 2011).

Plaintiffs' claims here depend on the common contention that Defendants conceived and implemented a scheme to manipulate and artificially inflate LPI costs that they would then charge to the borrower. All members of the putative class were injured in the same manner:  they were charged amounts for LPI that included inflated costs, and have paid or now owe amounts in excess of what their mortgage agreements allowed.  *See Williams,* 280 F.R.D. at 672 (finding commonality where "all members of the propose class were injured in the same manner, namely by being charged inflated premiums for the LPI").

Thus, while only one question of law *or* fact is required, many common questions capable of class-wide resolution arise here, including whether Defendants inflated LPI charges; whether Regions breached the implied covenant by entering into an exclusive arrangement to do so; and whether the Assurant Defendants were tortuously interfered with the Plaintiffs' business relationship.  These issues satisfy commonality.  *See, e.g., id.* at *5 ("The determination of the truth or falsity of the Plaintiff's allegations that Wells Fargo and QBE engaged in a scheme to force-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke.").

### 3. Plaintiffs' Claims Are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires Plaintiffs to demonstrate that their claims are typical of those held by the proposed class.  *See* Fed. R. Civ. P. 23(a)(3).  Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing

16

on the named plaintiff's claims in relation to the class. *Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 n.23. (S.D. Fla. 2004)  "Any atypicality or conflict between the named Plaintiff's claims and those of the class must be clear and must be such that the interests of the class are placed in significant jeopardy." *Cheney,* 213 F.R.D. at 491.

Plaintiffs' claims in this case arise from the same course of conduct and are based on the same legal theories as those brought on behalf of the proposed class.  Plaintiffs and every class member had their mortgage loans owned or serviced by Regions that were governed by common and materially uniform agreements.  As a result, once their voluntary policies had lapsed, Regions uniformly charged Plaintiffs and every other member of the proposed class inflated amounts for LPI.

### 4.   Plaintiffs and Their Counsel Are Adequate Representatives.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney*, 213 F.R.D. at 495.  "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

### a.   Plaintiffs Do Not Have Interests Antagonistic to Settlement Class Members.

Adequacy exists where a class representative shares common interests with the class and seeks the same type of relief for him- or herself and the settlement class members.  *See Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997); *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 600 (S.D. Fla. 1991).  Here, Plaintiffs have no interest antagonistic to those held by the Settlement Class.  The class definition includes only those who were subject to Defendants' LPI scheme.  (Ex. A ¶ 3.1).  All class members had LPI forced on their homes and were charged inflated amounts

for coverage. (*Id.*) All Settlement Class members who paid any portion of the amounts owed for LPI and submit a valid claim form will recover 12.5% of the LPI policy if it was placed on or before October 31, 2013 and 7% if the LPI policy was placed on or after November 1, 2013.  The two percentages correlate to the time period where Regions was collecting an improper "commission" as alleged by Plaintiffs.  Regions ceased collecting the commission as of November 1, 2013.  Thus, the critical issues in this case—the existence, implementation, and unlawfulness of Defendants' LPI scheme—are common issues.  Plaintiffs and absent class members share a common goal:  to recover the inflated portion of the amounts charged for LPI.  Plaintiffs have satisfied Rule 23(a)(4). *See Williams*, 280 F.R.D. at 673-74.

### b.  Settlement Class Counsel Are Qualified and Experienced.

The attorneys who seek to represent the Settlement Class in this case are highly qualified to serve as class counsel, have been investigating LPI claims for more than five years, and have served as lead and co-lead counsel in some of the largest class actions in the country, as well as insurance-related complex cases.  The three law firms that Plaintiffs seek to name as Class Counsel in this action are Kozyak Tropin & Throckmorton, LLP, Podhurst Orseck, P.A., and Harke Clasby & Bushman, LLP.  These firms have successfully prosecuted consumer class actions and their law firms are well respected in the communities that they serve.

### B.  The Settlement Class Meets the Requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one subsection of Rule 23(b). *Cheney*, 213 F.R.D. at 489.  Plaintiff here seeks certification under Rule 23(b)(3), under which certification is appropriate if (1) common questions of law or fact predominate over those affecting only individual class members and (2) class treatment is superior to other adjudication methods. *See* Fed. R. Civ. P. 23(b)(3).  The latter question implicates manageability concerns, which do not bear on certification of a settlement

18

class. *See Checking Account Overdraft Litig.*, 275 F.R.D. at 659.

Here, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [Defendants'] scheme to" manipulate LPI charges to the proposed class. *Id.* at 676. Proof of the scheme may be made by evidence that would remain the same regardless of class size or composition. Common issues would predominate over any individual issue.

Moreover, a comprehensive resolution of the Settlement Class members' claims in this action would be far superior to litigating each of their claims separately. "Since the damage amounts allegedly owed to each individual [borrower] are relatively low—especially as compared to the costs of prosecuting the types of claims in this case involving complex, multi-level business transactions between sophisticated defendants—the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits." *Williams*, 280 F.R.D. at 675. Accordingly, the Court should certify the proposed class.

## III. THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE.

Federal Rule of Civil Procedure 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Class notice should be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The parties' proposed notice plan readily meets this standard. The Settlement Agreement provides that the Settlement Administrator shall distribute class notice by first-class mail in the form attached as Exhibit A to the Settlement Agreement to all identifiable class members no fewer than 90 days before the final approval hearing. (Ex. A ¶ 6.1). The Settlement also provides for internet notice, the establishment of a website, publication in the *USA Today*, and a toll-free

number through which Settlement Class members can acquire information, and allows class members to submit claims online. (*Id.* ¶¶ 6.2, 6.3, 6.4.)

The notice itself also satisfies the requirements of the Federal Rules.  It provides, among other things, a clear definition of the Class; a description of the underlying lawsuit and the material terms of the Settlement; instructions as to how Settlement Class members may make a claim and determine whether they are eligible to do so; an explanation of objection and opt-out rights and a date by which Settlement Class members may opt out, and information regarding how to do so; instructions as to how to object to the Settlement and an objection deadline; the date on which the Court will hold a Final Approval Hearing; and the internet address and toll-free number from which class members may obtain additional information about the Settlement and its terms.  (*Id.* at Ex. A.)  The claim form and instructions also provide clear and comprehensive instructions as to who is eligible for relief and how to make a claim. (*Id.* at Ex. B.)

## IV.   THE COURT SHOULD APPOINT THE UNDERSIGNED FIRMS AS CLASS COUNSEL.

The parties have defined Class Counsel to include the three undersigned law firms. (Ex. A ¶ 2.14).   Plaintiff and the undersigned now move the Court to appoint these three firms as Settlement Class Counsel, as it has done in numerous other LPI actions.  Undersigned counsel have significant experience litigating these cases, having represented plaintiffs in actions against approximately major mortgage lenders and servicers, the Assurant Defendants, and QBE, the other major force-placed insurer that contracts with major lenders to issue force-placed coverage.

## V.   THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

Plaintiff requests that the Court schedule the Final Approval Hearing at its earliest convenience no fewer than 150 days after entry of an order preliminarily approving the Settlement. Should the Court grant this Motion, Plaintiff will file the final approval motion on a date set by the Court, which shall be no earlier than ninety days after service of class notice.

**CONCLUSION**

Class Counsel respectfully requests that the Court enter an order granting preliminary approval of the settlement.


Respectfully submitted this 13th day of May, 2016.

By: /s/ Adam M. Moskowitz

1002030

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>Florida Bar No. 984280<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>Florida Bar No. 965723<br>tr@kttlaw.com<br>Rachel Sullivan, Esq.<br>Florida Bar No. 815640<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>Florida Bar No. 81712<br>rn@kttlaw.com<br>**KOZYAK TROPIN &<br>THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone:  (305) 372-1800<br>Facsimile:   (305) 372-3508<br>*Counsel for Plaintiffs* | Aaron S. Podhurst, Esq.<br>Florida Bar No. 63606<br>apodhurst@podhurst.com<br>Peter Prieto, Esq.<br>Florida Bar No. 501492<br>pprieto@podhurst.com<br>John Gravante, III, Esq.<br>Florida Bar No. 617113<br>jgravante@podhurst.com<br>Matthew Weinshall<br>Florida Bar No. 84783<br>mweinshall@podhurst.com<br>**PODHURST ORSECK, P.A.**<br>City National Bank Building<br>25 West Flagler Street, Suite 800<br>Miami, Florida 33130<br>Telephone: 305-358-2800<br>Facsimile: 305-358-2382<br>*Counsel for Plaintiffs* |
| Lance A. Harke, Esq.<br>Florida Bar No. 863599<br>lharke@harkeclasby.com<br>Sarah Engel, Esq.<br>Florida Bar No. 991030<br>sengel@harkeclasby.com<br>Howard M. Bushman, Esq.<br>Florida Bar No. 0364230<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone:     (305) 536-8220<br>Facsimile:      (305) 536-8229<br>*Counsel for Plaintiffs* | Peter A. Muhic, Esq.<br>Email: pmuhic@ktmc.com<br>Tyler S. Graden, Esq.<br>Email: tgraden@ktmc.com<br>**KESSLER TOPAZ<br>MELTZER & CHECK, LLP**<br>280 King of Prussia Road<br>Radnor, PA  19087<br>Telephone:  (610) 667-7706<br>Facsimile:  (610) 667-7056<br>*Counsel for Plaintiffs* |

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on

the 13th day of May, 2016 and served by the same means on all counsel of record.

By: <u> /s/ Adam M. Moskowitz</u>

1002030